UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COPYTELE, INC., <br><br>Plaintiff, <br><br>v. <br><br>AU OPTRONICS CORP., *et al.*, <br><br>Defendants. <br>_____/ | No. C-13-0380 EMC <br><br>**ORDER CONDITIONALLY GRANTING DEFENDANT E INK'S MOTION TO STAY, AND DEFERRING RULING ON DEFENDANT E INK'S MOTION TO DISMISS** <br><br>**(Docket Nos. 50, 52)** |

Currently pending before the Court are (1) E Ink's motion to stay claims pending the arbitration between AUO and CopyTele and (2) E Ink's motion to dismiss for failure to state a claim for relief. Having considered the parties' briefs and accompanying submissions, the oral argument of counsel, and the parties' joint letter of July 3, 2013, the Court hereby conditionally **GRANTS** the motion to stay. Because the Court is granting the motion to stay, it shall **DEFER** ruling on the motion to dismiss pending the results of the arbitration.

## I. DISCUSSION

A. Motion to Dismiss

As a preliminary matter, the Court acknowledges that E Ink has asked the Court to dismiss all claims asserted against it with prejudice and that it has asked for a stay pending the AUO/CopyTele arbitration only as alternative relief. This approach, however, does not make sense as it would have the Court opining on the merits of claims asserted against both E Ink and AUO even though the claims against AUO are subject to arbitration. Moreover, even if the claims against

E Ink should be dismissed,[1] that does not automatically mean that they should be dismissed with prejudice; futility would need to be established which is a fairly high threshold, particularly given that this is E Ink's first motion to dismiss. The Court, therefore, concludes that the more reasonable approach is to address first the motion to stay. Only if the Court finds that a stay pending the AUO/CopyTele arbitration is not warranted shall it address E Ink's motion to dismiss.

B.   Motion to Stay

In the motion to stay, E Ink argues that, because the claims against AUO are arbitrable, the claims against E Ink should be stayed pending the resolution of that arbitration. E Ink argues that the claims against it are inextricably intertwined with the claims against AUO, and thus, there should be a stay either under the Federal Arbitration Act ("FAA"), *see* 9 U.S.C. § 3, or pursuant to the discretionary powers of this Court to control its own docket.

The Court need not address the issue of whether § 3 allows a court to issue a stay when the party moving for the stay is not a signatory to the arbitration agreement.[2] This is because, at the very least, a discretionary stay is warranted pursuant to *Landis v. North American Co.*, 299 U.S. 248 (1936). *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n.23, (1983) (recogniz[ing] that, "[i]n some cases, . . . it may be advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration[;] [t]hat decision is one left to the district court (or to the state trial court under applicable state procedural rules) as a matter of its discretion to control its docket").

Under *Landis* and its progeny, a court must examine

> the competing interests which will be affected by the granting or refusal to grant a stay . . . . Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

---

[1] The Court expresses no opinion on the matter at this juncture.

[2] As the Court noted at the hearing, the Fifth Circuit has applied § 3 in certain circumstances where the moving party is a nonsignatory to the arbitration agreement. *See, e.g.*, *Waste Mgmt. v. Residuous Indus. Multiquim, S.A.*, 372 F.3d 339, 342-43 (5th Cir. 2004); 282 F.3d 343, 347-48 (5th Cir. 2002). The Ninth Circuit, however, has not squarely addressed the issue.

2

*Lockyer v. State of Cal.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (internal quotation marks omitted).

### 1.  Hardship to Parties

In its papers, CopyTele suggests that a stay of the claims against E Ink will cause hardship to CopyTele because it will be "forced to wait years to obtain redress for the wrongful conduct that has brought it to the brink of insolvency." Opp'n at 6. There are several problems with this argument. First, CopyTele has not provided any evidence to support its claim that the arbitration will take years. Indeed, one of the alleged benefits of arbitration is that it is a speedier process. Second, CopyTele has never submitted any evidence that it is on the "brink of insolvency," Opp'n at 16, as claimed. In its complaint, CopyTele does allege that "AUO's fraud and breaches of the Agreements have caused significant hardship to CopyTele, resulting in the layoff of many employees, a decrease in its stock price, and the near bankruptcy and liquidation of the company." Compl. ¶ 51. Nevertheless, allegations are not evidence. Third, if CopyTele obtains relief in arbitration, presumably that will afford it financial benefit. Accordingly, there is little in the record before the Court to establish hardship on the part of CopyTele if it were forced to resolve the arbitration first before litigating its claims against E Ink.

To be sure, the hardship claimed by E Ink if a stay were to be denied is also problematic. The only hardship asserted by E Ink is the "significant expense, time, and effort" that litigation would entail when the arbitration might moot out or at least streamline all or a number of the claims. Reply at 4. The problem for E Ink is that "being required to defend a suit . . . does not constitute a clear case of hardship or inequity within the meaning of *Landis*." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (internal quotation marks omitted).

Nonetheless, as this Court has noted in a prior case, a party seeking a stay must show hardship only if the party opposing the stay first demonstrates that it is a fair possibility that the stay will cause it injury. *See ASIS Internet Servs. v. Member Source Media, LLC*, No. C-08-1321 EMC, 2008 U.S. Dist. LEXIS 109241, at *6 (N.D. Cal. Sept. 8, 2008); *see also Dependable Highway*, 498 F.3d at 1066 (stating that, "'if there is even a fair possibility that [a] stay . . . will work damage to some one else,' the stay may be inappropriate absent a showing by the moving party of 'hardship or inequity'"). CopyTele has failed to make that demonstration.

### 2. Judicial Economy

Because the record before the Court says little about hardship to the parties, the Court is ultimately left with a decision about judicial economy – *i.e.*, if the Court were to stay the claims against E Ink to await the results of the arbitration between AUO and CopyTele, would that simplify any issues, proof, and/or questions of law in the pending litigation?

Given CopyTele's allegations – *i.e.*, concerted action on the part of AUO and E Ink – rulings made in the AUO arbitration clearly have the potential to simplify the rulings here with respect to the claims against E Ink. If, for example, AUO never fraudulently induced CopyTele into entering the EPD and nFED Agreements, then CopyTele's claim against E Ink for aiding and abetting fraudulent inducement could not be sustained. Similarly, if AUO did not fraudulently induce CopyTele to enter into the contracts, that would likely impact the antitrust claims (attempted monopolization and conspiracy to monopolize) against E Ink – as alleged in the complaint. *See, e.g.*, Compl. ¶ 83 (in claim for conspiracy to monopolize, alleging that "E Ink and AUO committed overt acts in furtherance of the conspiracy to monopolize, including but not limited to AUO agreeing to sell SiPix, and E Ink agreeing to buy SiPix, AUO defrauding and inducing CopyTele to license CopyTele's EPD Patents to AUO under the guise of a joint development arrangement, and AUO's clandestine sublicense of CopyTele's EPD Patents to E Ink"). CopyTele's arguments to the contrary are not convincing.[3]

In its papers, CopyTele argued that there is still a way that judicial economy can be served by allowing both the arbitration and the litigation to take place at the same time. In other words,

---

[3] For example, CopyTele notes that only E Ink, and not AUO, has been sued for attempted monopolization. *See* Opp'n at 4. But clearly AUO is being sued along with E Ink for conspiracy to monopolize, and there is no real dispute that both monopolization claims are predicated on the same facts. *Compare, e.g.*, Compl. ¶ 75 (in claim for attempted monopolization, alleging that "E Ink and AUO agreed, combined, and conspired to attempt to acquire and maintain monopoly power in the market for [EPD] products" and that, "[p]ursuant to these agreements, accommodations, and conspiracy, E Ink attempted to acquire monopoly power and maintain it by acquiring, sublicensing, and cross-licensing CopyTele's and others' [*i.e.*, SiPix] [EPD] patents"), *with* Compl. ¶ 83 (in claim for conspiracy to monopolize, alleging that "E Ink and AUO committed overt acts in furtherance of the conspiracy to monopolize, including but not limited to AUO agreeing to sell SiPix, and E Ink agreeing to buy SiPix, AUO defrauding and inducing CopyTele to license CopyTele's EPD Patents to AUO under the guise of a joint development arrangement, and AUO's clandestine sublicense of CopyTele's EPD Patents to E Ink").

4

according to CopyTele, there is a way to coordinate the litigation and the arbitration. While, in its papers, CopyTele did not give any specifics as to how this coordination could be effected, it did provide some details at the hearing on E Ink's motion. More specifically, it argued that discovery in the litigation and arbitration could be coordinated so as to avoid duplication of discovery in the two fora. Because this argument had some merit, the Court asked the parties to meet and confer to determine whether they could reach an agreement as to coordination of discovery.

As reflected by the parties' joint letter of July 3, 2013, the parties were not able to reach agreement. Having reviewed the joint letter, the Court concludes that E Ink's position has more merit. That is, E Ink has stated that it will participate in the AUO/CopyTele arbitration for purposes of discovery and that the discovery developed in arbitration may be used in this litigation. This agreement will likely decrease the chance of discovery being duplicated in this litigation. The Court acknowledges that it will not foreclose the possibility of additional discovery taking place in this litigation post-arbitration, particularly because discovery rules in courts tend to be more liberal than discovery rules in arbitration.[4] However, that is largely unavoidable. The Court is not inclined to open discovery in this case which would end run the arbitration to which CopyTele agreed.

CopyTele argues that E Ink's agreement still is not enough and contends that, at the very least, this Court

> should maintain the power to resolve any disputes that arise regarding E Ink's failure to comply with the arbitrator's discovery decisions. If, for example, the arbitrator allows CopyTele to depose E Ink employees, but E Ink refuses to allow the deposition on the grounds that it is not subject to the arbitrator's rulings because it is not a party to the arbitration, or that the request is burdensome or unreasonable, the Court should maintain the power to compel E Ink to engage in such discovery in order to effectuate the Court's goal of requiring efficient and non-duplicative discovery.

Docket No. 90 (Letter at 2). While the Court is not unsympathetic to CopyTele's position, it does not agree that this is a role that the Court should adopt. CopyTele is essentially asking the Court to oversee the arbitration (even if only for discovery purposes), which is not proper. Moreover, CopyTele's concern is at least for the moment speculative. Nothing in E Ink's portion of the letter

---

[4] Thus, for example, a person deposed in the arbitration may be deposed a second time as a part of this litigation.

suggests that it would not comply with the arbitrator's discovery decisions. Finally, there is an easier way to address CopyTele's concern – *i.e.*, a conditional stay, as discussed below.

The Court therefore concludes that a stay of this litigation pending the AUO/CopyTele arbitration is justified, but it shall conditionally grant the stay in order to promote judicial economy. That is, the stay is granted upon the following conditions: (1) E Ink shall participate in the AUO/CopyTele arbitration (as a third party) for purposes of discovery; (2) the parties agree that the discovery developed in the arbitration may be used in this litigation; and (3) E Ink shall comply with the arbitrator's discovery decisions. If E Ink disobeys an order of the arbitrator, this Court may then, and only then, entertain a motion to lift the stay and enforce such order. If these conditions are not satisfied, then CopyTele may also move for relief from the stay.

## II. CONCLUSION

For the foregoing reasons, the Court conditionally grants E Ink's motion to stay and defers ruling on the motion to dismiss until after the arbitration between AUO and CopyTele is resolved.

This order disposes of Docket Nos. 50 and 52.

IT IS SO ORDERED.

Dated: July 9, 2013

EDWARD M. CHEN
United States District Judge